IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL NO. 17-00067 DKW-KSC |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| vs. | |
| DISCOVERING HIDDEN HAWAII TOURS, INC. d/b/a/ DISCOVER HAWAII TOURS, HAWAII TOURS AND TRANSPORTATION INC., and BIG KAHUNA LUAU, INC., | |
| Defendants. | |

## INTRODUCTION

The United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges sexual harassment, constructive discharge, and retaliation claims against each of the three Defendants on behalf of five former male employees. The alleged discriminating official in each instance, according to the EEOC, is the Owner and President of Discovering Hidden Hawaii Tours, Leopoldo Malagon III, whom the EEOC asserts controlled each of the Defendant entities.

Defendants move to dismiss: (1) as untimely all claims on behalf of Claimants 1 and 2 because the events associated with their claims occurred more than 300 days

before the Charging Party filed his November 2015 discrimination charge with the EEOC; (2) the retaliation claim brought by Claimant 1 due to the absence of an adverse employment action; (3) the constructive discharge allegations of Claimants 1, 3 and 4 as insufficiently pled; (4) Claimant 4's sexual harassment claim because the harassment, as alleged, was neither severe nor pervasive; and (5) any claims against Hawaii Tours and Transportation Inc. and Big Kahuna because they were not the employers of any claimant.

For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED. The EEOC is permitted leave to file an amended complaint consistent with the terms of this Order.

## BACKGROUND

### I. The EEOC's Allegations

On November 10, 2015, the Charging Party filed a Charge of Discrimination, alleging sexual harassment against his former employer, Discovering Hidden Hawaii Tours, Inc. ("DHT"). Decl. of Eric Yau, Ex. 1 (11/10/15 Charge); Dkt. No. 24-2. During the course of investigating the Charge, the EEOC discovered additional claimants, each allegedly suffering similar harassment based on sex (male) while employed by Defendants, and some also experiencing retaliation and constructive discharge. According to the EEOC, its investigation revealed a pattern or practice that began as early as 2006, wherein Malagon sexually harassed male

employees by making sexual comments, propositioning them for sex at the office and at his home, and initiating unwelcome physical touching.   Complaint ¶¶ 19, 21.

On February 15, 2017, the EEOC filed this lawsuit under 42 U.S.C. § 2000e–5(f)(1) and (3) ("Section 706") on behalf of the Charging Party and Claimants 1, 2, 3, and 4 against DHT, Hawaii Tours and Transportation Inc., and Big Kahuna Luau, Inc., under the theory that Defendants operate as a single enterprise controlled by Malagon, DHT's Owner and President.   Complaint ¶¶ 8–11.   The Complaint alleges that DHT employed the Charging Party as a Vice President of Sales and Marketing, and that Malagon subjected the Charging Party to repeated incidents of sexual harassment from May 2015 through August 2015.   When the Charging Party complained to Defendants' human resources personnel about Malagon's conduct, Defendants took no corrective action and, shortly thereafter, Malagon threatened to fire him and withhold his bonuses.   Complaint ¶ 19.a.   The Charging Party resigned in August 2015 as a result of the harassment and retaliation.   Complaint ¶ 19.a.

Claimant 1 worked for DHT as a social media marketing and reservations manager.   The EEOC alleges that in October 2010, Malagon subjected Claimant 1 to unwelcome sexual harassment, including making comments of a sexual nature and inviting Claimant 1 to lunch.   When Claimant 1 complained to his supervisor that Malagon's conduct made him uncomfortable, the supervisor responded by

suggesting that Claimant 1 accept Malagon's lunch invitation, "implying that his continued employment was contingent on Claimant 1's acquiescence to sexual contact." Complaint ¶ 19.b. Claimant 1 agreed to go to lunch, but Malagon instead took Claimant 1 to his apartment, where Claimant 1 "complied with Malagon's request for oral sex." Complaint ¶ 19.b. Claimant 1 later communicated to Malagon that the incident was "not ok," then complained to his supervisor and called a hotline number to report the incident. Complaint ¶ 19.b. Defendants not only failed to take corrective action but issued Claimant 1 a poor performance review two months after he reported Malagon's conduct. Claimant 1 resigned as a result of the harassment. Complaint ¶ 19.b.

The Commission alleges that Claimant 2 was employed from February 2012 through May 2013 as an internet marketer and sales manager. During his job interview, Malagon subjected Claimant 2 to unwelcome sexual harassment and touching. Complaint ¶ 19.c.

Claimant 3 worked for DHT as a bartender from May 2015 through July 2015. Complaint ¶ 19.d. He was allegedly subjected to unwelcome sexual harassment by Malagon on multiple occasions, which involved comments and questioning of a sexual nature and showing Claimant 3 photographs of Malagon and others engaged in sexual acts. Complaint ¶ 19.d. Claimant 3 resigned "in part as a result of the harassment." Complaint ¶ 19.d.

Claimant 4 also worked as a bartender, from July 2015 to August 2015, although the particular entity he worked for is not specified. Malagon allegedly subjected Claimant 4 to unwelcome sexual comments while recruiting him for "employment with Defendants" and continued to make "comments of a sexual nature during his employment." Complaint ¶ 19.e. The unwelcome sexual comments included asking what "sexual stuff Claimant 4 was into, and talking about sex parties and orgies." Complaint ¶ 19.e.

The Complaint alleges generally that the "conduct described in Paragraph 19 resulted in the constructive discharge of male employees who were forced to resign because of the harassment," Complaint ¶ 20, and that "Malagon's treatment of Charging Party and Claimants 1 through 4 is illustrative of a pattern or practice of sexual harassment dating from at least 2006 through the present." Complaint ¶ 21.

## II.   **Defendants' Motion To Dismiss**

Defendants move to dismiss the claims brought on behalf of Claimants 1 and 2 because the acts they complained of occurred more than 300 days before the Charging Party filed his Charge with the EEOC in November 2015. Defendants also move to dismiss as insufficiently pled the retaliation and constructive discharge claims of all claimants. With respect to Claimant 4 only, Defendants seek dismissal of the sexual harassment claim because the Complaint fails to allege harassing conduct that was severe and pervasive. Finally, the Motion requests dismissal of

Big Kahuna (which had not yet come into existence at the time of the events in the Complaint) and Hawaii Tours and Transportation because neither was an employer of any claimant.

The EEOC argues that all of the claims have been timely brought because, taken as a whole, the Complaint pleads facts demonstrating a pattern or practice of sexual harassment that extends and is actionable beyond the 300-day limitation period. It also contends that the Complaint includes sufficient facts to support the asserted sexual harassment, constructive discharge and retaliation claims.[1] Moreover, the EEOC maintains that it plausibly alleges facts showing that all three Defendants functioned as one employer, and form part of the same integrated enterprise, which inflicted or condoned the pattern or practice of sexual harassment that underlies the EEOC's suit.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

---

[1]In its opposition, the EEOC clarified that it does not assert individual retaliation claims on behalf of Claimants 2, 3, and 4, and further, that it does not allege that Claimant 2 was constructively discharged. *See* Mem. in Opp'n at 3, 14; Dkt. No. 24.

Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief, as required by Rule 8(a)(2). *Id.* at 679.

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003); *see also id.* at 908 (A court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a Rule 12(b)(6)] motion to dismiss into a

motion for summary judgment."). Because the EEOC Charge is referenced in the Complaint and is a matter of public record, the Court grants the parties' request to take judicial notice of that document. *See, e.g., Onodera v. Kuhio Motors Inc.,* 2013 WL 4511273, at *2 (D. Haw. Aug. 23, 2013) (citing *EEOC v. Global Horizons, Inc.,* 860 F. Supp. 2d 1172, 1193 n.5 (D. Haw. 2012); *Gallo v. Bd. of Regents of Univ. of Cal.,* 916 F. Supp. 1005, 1007 (S.D. Cal. 1995)). The Court also takes judicial notice of the articles of incorporation and public records attached to the parties' briefs. *See* Fed.R.Evid. 201(b); *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).

## **DISCUSSION**

As detailed below, the Court grants Defendants' Motion with respect to the untimely claims brought on behalf of Claimants 1 and 2 that are based upon allegations beyond the 300 days before the initial Charge was filed with the EEOC. Because the constructive discharge allegations with respect to Claimants 3 and 4, and the sexual harassment claim of Claimant 4 are insufficiently pled, those claims are likewise dismissed. Finally, the Complaint fails to allege sufficient facts to state a Title VII claim against Hawaii Tours and Transportation Inc. or Big Kahuna, where the allegations do not establish that either was an employer of any claimant. Defendants' Motion is therefore granted, but with leave to amend consistent with the instructions below.

# I.    The Untimely Claims Are Dismissed

Defendants seek dismissal of the claims brought on behalf of Claimants 1 and 2, where the Complaint contains no allegations that either claimant was harassed, retaliated against or constructively discharged within 300 days of the Charging Party filing his November 10, 2015 Charge.   The Commission relies upon the "continuing violation" doctrine to extend the 300-day period, arguing that, because it is pursuing a pattern-or-practice claim, the statute of limitations does not apply as to individual claimants because the hostile work environment affected all claimants. Because the Court concludes that the continuing violation doctrine does not operate in the manner urged by the EEOC and does not cover individuals who did not themselves suffer any unlawful employment practice within the 300-day limitation period, Defendants' Motion is granted as to the untimely claims brought on behalf of Claimants 1 and 2.

## A.    Legal Framework

"A statute-of-limitations defense, if 'apparent from the face of the complaint,' may properly be raised in a motion to dismiss."   *Seven Arts Filmed Entm't Ltd. v. Content Media Corp*., 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec. Corp*., 623 F.2d 117, 119 (9th Cir. 1980)); *see also Rivera v. Peri & Sons Farms, Inc*., 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense

in a motion to dismiss.") (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126, 1128-29 (9th Cir. 1999)).   That said, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."   *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (citation and quotation marks omitted).   In making such a determination, the Court is not "required to accept as true allegations that contradict . . . matters properly subject to judicial notice[.]"   *Seven Arts*, 733 F.3d at 1254 (internal quotation marks omitted).   In this case, the statute of limitations issues are apparent on the face of the Complaint.

Title VII requires that a "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."   42 U.S.C. § 2000e–5(e)(1); *see also EEOC v. Global Horizons, Inc.*, 904 F. Supp. 2d at 1090 n.2 (D. Haw. 2012) ("The 300-day limitations period is applicable in this case because Title VII extends the 180-day period to 300 days if filed in a 'worksharing' jurisdiction. . . . Hawaii and California are both 'worksharing' states such that administrative claims filed with the EEOC are deemed 'dual-filed' with the state's local agency and vice versa.") (citations omitted).   Generally, for hostile work environment claims of a continuing nature, the aggrieved employee must allege "at least one discrete act had occurred within the 300-day time frame."   *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir.

2004) (citing *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 114 (2002)).[2]  "In

addition, an aggrieved employee who fails to file a timely charge with the EEOC

may still be able to pursue a claim under the piggyback or single-filing rule, in which

the employee 'piggyback[s]' onto the timely charge filed by another plaintiff for

purposes of exhausting administrative remedies."  *Arizona ex rel. Horne v. Geo

Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc.

v. EEOC*, 137 S. Ct. 623 (2017).

The parties dispute whether, when the EEOC brings a Section 706 pattern or

practice hostile work environment claim on behalf of a class of aggrieved

employees, it may extend liability to include employees who suffered the same type

of harassment outside of the 300-day limitation period.  As discussed below, the

weight of authority supports Defendants' position that the continuing violation

---

[2]Although *Morgan* was not a pattern or practice claim and declined to consider the timely filing
question of pattern or practice claims brought by private litigants, courts note that the "definitions
it sets forth for discrete claims and its discussion of the continuing violations doctrine…are
valuable."  *EEOC v. United States Steel Corp.*, 2012 WL 3017869 (W.D. Pa. July 23, 2012)
(quoting *EEOC v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 624 n.5 (N.D. Ohio 2011)).
*See also Morgan*, 536 U.S. at 115 n.9 ("We have no occasion here to consider the timely filing
question with respect to 'pattern-or-practice' claims brought by private litigants as none are at
issue here.").  *Morgan* held that causes of action that can be brought individually expire with the
applicable limitations period.  By contrast, the hostile work environment theory is designed
explicitly to address situations in which the claim is based on the cumulative effect of a thousand
cuts, rather than on any particular action taken by the defendant.  In such cases, the filing clock
cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a
claim expire as to that first act, because the full course of conduct is the actionable infringement.
*See O'Connor v. City of Newark*, 440 F.3d 125, 128–29 (3d Cir. 2006) (citing *Morgan*, 536 U.S. at
117–18).

doctrine properly applies to include only the additional, otherwise time-barred claims of aggrieved individuals who suffered at least one unlawful employment action within 300 days of the filing of the Charge, but does not permit the inclusion of employees who did not themselves suffer any unlawful employment practice within that 300-day period.

### B. The Claims On Behalf Of Claimants 1 And 2 Are Time-Barred

The EEOC acknowledges that the Complaint contains no allegation that Claimants 1 or 2 suffered from harassment, retaliation, or constructive discharge within the 300-day period before the Charging Party filed his Charge on November 10, 2015. The EEOC also appears to acknowledge that neither Claimant can make such an allegation. Instead, the Commission contends that, because it raised a pattern or practice claim, "a hostile work environment can constitute a continuing violation involving actions beyond the 300-day limitation," as long as "all acts constituting the claim are part of the same unlawful employment practice and any act occurred within the 300-day charge filing period" *as to any member of the class*. Mem. in Supp. at 6, 7 (citing *U.S. EEOC v. Global Horizons, Inc*., 904 F. Supp. 2d 1074, 1094 (D. Haw. 2012) (additional citations omitted)). Under the EEOC's proposal, the continuing violation doctrine protects those who have slept on their rights and resurrects their otherwise expired claims, whenever a subsequent employee whom the dilatory one may never know or be aware of fortuitously

appears on scene, is subject to the same type of harassing conduct, and sees fit to file a timely charge.   That cannot be the rule.

Although the Ninth Circuit does not appear to have been presented with this precise question, it has ruled that the 300-day limitation period applies to the claims of individual employee class members in the context of a Section 706 case brought by the EEOC.   In *Arizona ex rel. Horne v. Geo Group, Inc.*, the Ninth Circuit held "that the EEOC and the [Arizona Civil Rights] Division may maintain their claims on behalf of aggrieved employees provided that the employee has alleged at least one act of misconduct that occurred within 300 days prior to the date the first aggrieved employee, Alice Hancock, filed her charge."   *Horne*, 816 F.3d at 1194.[3] The Ninth Circuit summarized its holding as follows: "the aggrieved employees who alleged acts of discrimination, harassment, or retaliation—the kind of discriminatory conduct alleged in Hancock's charge—within the 300 days preceding Hancock's initial charge have made timely claims."   *Id*. at 1204.   It further clarified the scope of its ruling: "We hold only that in an EEOC class action, the claims of individuals

_____

[3]The question before the Circuit in *Horne* was whether the 300-day filing period for those aggrieved employees should run from the date of the EEOC's Reasonable Cause Determination or the initial Charge.   *See Horne*, 816 F.3d at 1207 n.8 ("We need not address whether the EEOC is subject to the same strict timing requirements as private litigants because it is undisputed that the aggrieved employees here alleged acts that occurred within the 300 days prior to Hancock's charge.").

may not be *dismissed* if they have alleged an act of misconduct within the 300 days prior to the filing of the initial employee's charge."  *Id*. at 1204 n.10.

Recent district court decisions agree that Section 706 limits the class of employees on whose behalf the EEOC may seek relief to those individuals who were allegedly subjected to unlawful employment practices during the 300 days before the date of the initial Charge.  *See, e.g*., *EEOC v. FAPS, Inc.,* 2014 WL 4798802, at *24 (D.N.J. Sept. 26, 2014) ("The plain language of Section 706(e)(1) clearly precludes the EEOC from seeking relief for individuals who could not have filed an EEOC charge during the filing period."); *EEOC v. U.S. Steel,* 2012 WL 3017869, at *5–7 (W.D. Pa. July 23, 2012) (dismissing pattern or practice claims brought by EEOC on behalf of employees who were subject to an alcohol breath test and/or termination more than 300 days before the filing of the Charge and noting that "multiple applications of an employer policy to different individuals on separate occasions would constitute multiple violations and not a single continuing violation."); *EEOC v. PBM Graphics Inc.,* 877 F. Supp. 2d 334, 353–54 (M.D.N.C. 2012) ("[T]he EEOC may not seek relief on behalf of individuals who allegedly suffered discrimination more than 180 days prior to the filing of the EEOC's charge, and the continuing violation doctrine, which revives stale claims, not stale parties, is inapplicable to the facts of this case, at least for individuals who suffered discrimination entirely outside of the statutory period, unless the worker also

experienced discrimination within the statutory period as well."); *EEOC v. Freeman,* 2010 WL 1728847, at *5–6 (D. Md. Apr. 27, 2010) (noting that "the continuing violation doctrine permits the inclusion of additional, but otherwise time-barred, *claims*—not the inclusion of otherwise time-barred *parties*" and opining that "the continuing violation doctrine should not be invoked to expand the class of individuals for whom the EEOC can seek relief under Title VII"); *EEOC v. Burlington Med. Supplies, Inc.,* 536 F. Supp. 2d 647, 658–59 (E.D. Va. 2008) (Holding in pattern or practice sexual harassment case that the "EEOC's special statutory mandate does not entitle it to expand substantive rights, such as reviving stale claims that would not otherwise be actionable under Title VII. . . . The Court therefore holds that only those class members experiencing injury within the 300-day limitations period will be entitled to individual relief at trial.") (citation and quotation marks omitted).[4]  *But see EEOC v. Sterling Jewelers, Inc.*, 2010 WL 86376 (W.D.N.Y. Jan. 6, 2010); *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527 (D.

---

[4]*See also EEOC v. Bloomberg L.P.,*751 F. Supp. 2d 628, 648–49 (S.D.N.Y. 2010) ("The 'pattern or practice' alleged should not be used to allow the EEOC to seek relief on behalf of otherwise time-barred *parties* when the challenged practice involves discrete acts of discrimination."); *Arce v. Valley Prune, LLC*, 3 F. Supp. 3d 794, 798 (E.D. Cal. 2014) (rejecting private Title VII class plaintiffs' request for leave to amend, noting that "expanding the class definition to beyond 300 days would permit people who were not exposed to the policy within the period of limitations to be part of the class, which is impermissible under *Domingo*.  Continuing violation theory . . . merely allows discriminatory conduct outside the limitations period to be used for evidentiary purposes [and] even if a defendant affirmatively perpetuates a hostile work environment, the limitations period is not eliminated") (citations and quotation marks omitted).

Md. 2007); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059 (C.D. Ill. 1998).

The district court's decision in *EEOC v. Freeman* is illustrative. There, the court concluded that the continuing violation doctrine was inapplicable to claims of a pattern or practice of refusing to hire job applicants based on race, national origin, and sex discrimination. 2010 WL 1728847, at *6. Addressing the parties' reliance upon *Morgan* and the "unique nature of hostile environment claims," the court noted that "an employer may be liable for acts occurring outside of the 300-day filing period, provided that (1) at least one act contributing to the claim occurs within the filing period, and (2) the acts falling outside of the 300-day filing period are part of the same actionable hostile environment claim." *Id.* at *5 (citation omitted). *Freeman* concluded that "the continuing violation doctrine permits the inclusion of additional, but otherwise time-barred, *claims*—not the inclusion of otherwise time-barred *parties*. This equitable exception to the 300-day filing period allows an individual who filed a timely charge to recover for acts outside the filing period if the nature of the claim involves 'repeated conduct' constituting a single 'unlawful employment practice.'" *Id*. at *6 (quoting *Morgan*, 536 U.S. at 115). The district court reasoned that where the EEOC seeks to enlarge the number of individuals entitled to recover rather than the claims a single individual may bring, the doctrine

has no applicability.  *Id.*[5]  The Court finds this reasoning both persuasive in the present context, as well as consistent with the Ninth Circuit's 2016 holding in *Horne.*

The Commission here is seeking to provide relief for individuals who did not themselves experience any unlawful employment actions during the 300-day filing window.  Although framed as a "pattern or practice" claim, using the continuing violation doctrine under the circumstances alleged here would expand the doctrine beyond its traditional boundaries.  The doctrine allows claims "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 117.  In its proper application, "[i]t does not matter that some component acts of the claim fall outside the statutory time period" as to each individual employee because the claim is "based on the cumulative effect of individual acts" suffered by that same employee.  *Id.*  These are not the circumstances here.  The continuing violation doctrine should not be expanded to cover individuals who did not suffer any act of discrimination, harassment, or retaliation within the 300-day limitation period.

---

[5]Based on the particular circumstances in that case, the court held that "[a] pattern or practice of refusing to hire job applicants does not constitute a continuing violation" in any event and "[l]inking together a series of decisions not to hire under the label of pattern or practice . . . does not change the fact that each decision constituting the pattern or practice is discrete."  2010 WL 1728847, at *6.

Although the Court's conclusion limits the class of individuals for whom the EEOC may seek relief under Section 706, like any limitations period, the timely charge requirement incorporates other policy and fairness considerations. Notably, "[t]his procedure services an important purpose: it provides repose for employers and prevents them from having to defend against long-stale claims." *Bloomberg*, 751 F. Supp. 2d at 645 (citing *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 371–72 (1977)); *see also Freeman*, 2010 WL 1728847, at *5 (finding that "concerns of open-ended liability and the need for prompt notification of the asserted violations to the employer" also weigh in favor of applying the timely charge requirement to claims brought under Section 707 by the EEOC).

In sum, any claims that accrued before January 14, 2015—300 days prior to the filing of the initial Charge on November 10, 2015—are time-barred. Because the Complaint only alleges conduct relating to Claimants 1 and 2 that occurred well-before this date (in 2010 and 2012–13, respectively), their claims are untimely. Defendants' Motion is therefore granted to the extent it seeks dismissal of the untimely claims brought on behalf of Claimants 1 and 2.[6]

---

[6]Because the Court dismisses as time-barred all claims brought on behalf of Claimant 1, the Court denies as moot the portion of the Motion requesting dismissal of Claimant 1's retaliation claim, and does not reach the parties' arguments with respect to that claim.

## II.     The Complaint Fails To State Constructive Discharge Claims
          On Behalf Of Claimants 3 And 4

The EEOC alleges that certain male claimants were forced to resign because of Malagon's sexual harassment.   Defendants move to dismiss these constructive discharge claims because the Complaint does not sufficiently allege that any claimant was forced to quit to escape intolerable working conditions.   Because the Court has already dismissed the allegations relating to Claimant 1 as untimely, it addresses only Claimants 3 and 4 below, and finds that the Complaint fails to allege facts necessary to support the elements of their constructive discharge claims.

"'Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.   The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?'"   *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). Stated similarly,

> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Poland*, 494 F.3d at 1184 (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000)).[7]    Unless conditions are "beyond ordinary discrimination, a complaining employee is expected to remain on the job while seeking redress." *Penn. State Police*, 542 U.S. at 147 (citation and quotation marks omitted).   An employee who quits his employment without giving his employer a reasonable chance to resolve the problem "'has not been constructively discharged.'"   *Poland*, 494 F.3d at 1184 (quoting *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir. 1996)).

Here, there are no allegations that either Claimant 3 or 4 provided notice of Malagon's alleged conduct to anyone in order to allow Defendants the opportunity to address the harassment.   *See, e.g.*, *EEOC v. Wedco, Inc*., 65 F. Supp. 3d 993, 1007 (D. Nev. 2014) (granting summary judgment for employer where the "EEOC offer[ed] no evidence that [the employee] provided Wedco with a reasonable opportunity to remedy the alleged racial harassment" and did not report any of the harassing conduct); *Connolly v. Remkes*, 2014 WL 5473144, at *10 (N.D. Cal. Oct. 28, 2014) (dismissing with leave to amend where plaintiff "does not allege that she

---

[7]In *Poland*, the Ninth Circuit reversed the district court, concluding as a matter of law that the plaintiff was not constructively discharged because the record did not show that the plaintiff's working conditions "were so poor that they trumped his motivation to earn a living." 494 F.3d at 1185.   In so holding, the court noted that a finding of constructive discharge cannot be based on an employee's subjective preferences and does not arise when an employee quits without giving his employer a reasonable opportunity to resolve the issues.   *Id.* at 1184–85.

gave her employer a 'reasonable chance to work out a problem' before quitting, which means that she 'has not been constructively discharged'. . . [a]t most, [plaintiff] has alleged that [she] chose to resign without confronting [her supervisor] about his actions") (quoting *Tidwell*, 93 F.3d at 494).[8]

Even assuming that Claimants 3 and 4 could not be "expected to remain on the job while seeking redress," *Penn. State Police*, 542 U.S. at 147, the Complaint does not sufficiently allege that they resigned specifically as a result of intolerable

---

[8]The EEOC contends that, under the circumstances, these claimants need not have given notice to Defendants of the alleged harassment because Malagon was DHT's Owner and Defendants' "proxy," and therefore, it "would have been futile to complain." Mem. in Opp'n at 16. The EEOC further posits that "where the alleged harasser is the owner and acted as the proxy of the company, the employer cannot escape liability by arguing that it could have rectified the sexual harassment if it had notice." Mem. in Opp'n at 16 (citing *EEOC v. Reeves*, 2003 WL 22999369, at *9 (C.D. Cal. Dec. 8, 2003) (finding that *Faragher/Ellerth* affirmative defense to vicarious liability for harassment was unavailable where the harasser was the founder, president, and major shareholder of the company charged with sex discrimination)). *Reeves*, however, is of no assistance to the EEOC because it did not address the issues currently before this Court, holding only that, "as a matter of law, the *Ellerth/Faragher* affirmative defense is not available to a defendant whose proxy/alter ego engaged in harassment." 2003 WL 22999369, at *9. *Reeves* was not a constructive discharge case and *Ellerth/Faragher* is not at issue here. Rather, the Ninth Circuit's subsequent decision in *Poland* and district cases interpreting it confirm that, generally, an opportunity to redress the problem is necessary, notwithstanding the identity of the alleged harasser. *Cf. Blake v. MJ Optical, Inc.*, 2017 WL 3758316, at *4 (8th Cir. Aug. 31, 2017) (Rejecting plaintiff's futility-of-notice argument, noting that plaintiff fails to "cite any case recognizing her proposed futility exception, likely because our precedent all but forecloses the notion," while acknowledging "the fact [that the company's president] is [the alleged harasser's] mother, and reporting to her 'may not have been . . . ideal; '" Plaintiff "'had an obligation not to jump to the conclusion that the attempt would not work and that her only reasonable option was to resign.' Before being held responsible for whatever problem there was, [the entity defendant] was entitled to a reasonable chance to address it.") (internal citations omitted); *Wolf v. Nw. Indiana Symphony Soc'y*, 250 F.3d 1136, 1143 (7th Cir. 2001) (granting summary judgment on constructive discharge claim where plaintiff did not complain about Symphony CEO and president's alleged sexual harassment, noting that even assuming that the president's "actions made [plaintiff] uncomfortable, it is telling that in this case [plaintiff] never reported the [president's] harassment to anyone at the Symphony").

working conditions.   The allegations with respect to Claimant 3, for instance, are vague as to whether his working conditions became intolerable so as "to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood," *Brooks*, 229 F.3d at 930, or that he resigned due to the harassment.   Rather, the Complaint alleges merely that, "[a]t least in part as a result of the harassment, Claimant 3 resigned from Defendants' employment." Complaint ¶ 19.d.; *see, e.g.*, *Duffy v. Paper Magic Grp., Inc*., 265 F.3d 163, 171 (3d Cir. 2001) (holding that where former employee's decision to leave her job was "based, in part, on her son's recent graduation from college and her resultant financial ability to leave," the employee was not constructively discharged due to continued pattern of age discrimination).   Nor does the Complaint specifically allege if or when Claimant 4 even resigned, much less why.   *See Green v. Brennan*, 578 U.S. 1769, 1776 (2016) (holding that a plaintiff does not have a "complete and present cause of action" for constructive discharge until he or she resigns because "the matter alleged to be discriminatory in a constructive-discharge claim necessarily includes the employee's resignation") (internal quotation marks omitted); *EEOC v. La Rana Hawaii, LLC*, 888 F. Supp. 2d 1019, 1047 (D. Haw. 2012) ("This allegation fails to allege "the element that requires the plaintiff to have actually quit.'") (quoting *Hubbard v. Bimbo Bakeries USA, Inc*., 270 Fed. Appx. 607, 609 (9th Cir. 2008)).

Because the Complaint as currently pled fails to sufficiently allege constructive discharge on behalf of Claimants 3 and 4, Defendants' Motion is granted as to this claim. Because amendment may be possible, dismissal is with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. The Complaint Fails To Allege Sufficient Facts To State A Sexual Harassment Claim On Behalf Of Claimant 4

Defendants move to dismiss the sexual harassment claim brought on behalf of Claimant 4 because the Complaint fails to allege that he was subjected to unwelcome conduct that was severe or pervasive. An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Horne*, 816 F.3d at 1206 (citing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109–10 (9th Cir. 2000)). Because the allegations do not amount to conduct that was either "severe or pervasive" enough to alter the conditions of

Claimant 4's employment, the EEOC fails to state a claim for harassment based upon sex.

The Complaint alleges that Malagon subjected Claimant 4 to "unwelcome sexual comments during the recruitment of Claimant 4 for employment with Defendants and continued to make comments of a sexual nature during his employment" as a bartender between July 2015 and August 2015.   Complaint ¶ 19.e.   "These comments included but were not limited to asking what 'sexual stuff' Claimant 4 was into, and talking about sex parties and orgies."   Complaint ¶ 19.e.   This represents the entirety of the allegations that are specific to Claimant 4, as the Commission has not brought retaliation or constructive discharge claims on his behalf.

The alleged comments regarding "sexual stuff" made during his recruitment and at unspecified times and of unspecified duration during his employment do not meet the legal standard for an actionable claim.   "'Conduct must be extreme to amount to a change in the terms and conditions of employment.'   To be actionable under Title VII, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"   *Montero v. AGCO Corp*., 192 F.3d 856, 860 (9th Cir. 1999) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).   Courts determine whether an environment is sufficiently

hostile or abusive by "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Kortan*, 217 F.3d at 1110 (quoting *Faragher*, 524 U.S. at 787–88). Such supporting allegations are missing here.

Looking at the totality of the circumstances alleged, the EEOC does not demonstrate either the severity or pervasiveness required in order for the conduct to sufficiently have altered the conditions of Claimant 4's employment and created an abusive working environment, based upon the sparse factual details provided.

Here, the allegations indicate that Malagon's comments were "unwelcome" and of a "sexual nature," but the Complaint does not allege the dates or frequency of the comments, nor whether Claimant 4 found the comments and questioning about what "sexual stuff" he "was into" to be subjectively offensive, nor whether the comments interfered with his ability to perform his job. In addition to the missing details, what is lacking is the context to plausibly demonstrate severity or pervasiveness. "Title VII is not a 'general civility code.' A violation is not established merely by evidence showing 'sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010) (quoting *Faragher*, 524 U.S. at 788 ). "Simple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.[9]

Because the Complaint does not include allegations of conduct by Malagon or any defendant that was sufficiently severe or pervasive to alter the conditions of Claimant 4's employment, the Motion is granted. Because amendment of this claim may be possible, dismissal is with leave to amend.

## IV. The Complaint Fails To Allege Sufficient Facts That Hawaii Tours And Transportation And Big Kahuna Were Claimants' Employers

Defendants seek dismissal of two entities—Hawaii Tours and Transportation and Big Kahuna—because neither was allegedly an employer of the Charging Party or any claimant. The Charging Party, Claimant 1 and Claimant 3 all worked for DHT. *See* Complaint ¶ 19.a.b.d. The Complaint does not specify which of the Defendant entities employed Claimants 2 and 4.

---

[9] *See, e.g.*, *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (where the plaintiff did not say that her work suffered because of five occasions of offensive sexual comments over a four-month period, "the evidence, viewed favorably to her, did not show sexual harassment that was sufficiently severe or pervasive to alter the terms of [her] employment and subject her to an abusive environment. . . ."); *Hubbard v. Bimbo Bakeries USA, Inc*., 2006 WL 2863222, at *11 (D. Or. Oct. 4, 2006), *aff'd*, 270 F. App'x 607 (9th Cir. 2008) (finding conduct neither pervasive nor severe, nor that it unreasonably interfered with plaintiff's work performance where there were no allegations that anyone "ever touched, threatened to touch, or attempted to touch plaintiff," and holding that allegations that a male co-worker "asked him about his sexual preference once, commented on plaintiff's tan 'a couple of times,' and commented on his weight loss and told him that he was 'looking good' between two and five times . . . cannot be fairly characterized as severe or pervasive" even where another co-worker also told "plaintiff that he liked males, told plaintiff he 'wanted' him, and once asked plaintiff if he 'had a big dick'").

The Complaint alleges that Malagon was "the sole partner, president, treasurer, and director" of DHT.   Complaint ¶ 8.   The Commission alleges that Hawaii Tours and Transportation's "sole function was to lease and operate vehicles used by DHT in their tours" and that Malagon "controlled the operations of Hawaii Tours and Transportation Inc., including the authority to hire/fire employees." Complaint ¶ 9.   Hawaii Tours and Transportation is owned by Danielle Diamond, Malagon's spouse.   Complaint ¶ 9.   The Complaint also alleges that Hawaii Tours and Transportation is the registered agent for service of Big Kahuna, and that Malagon "managed the luau event operated by Big Kahuna Luau, Inc., including supervision of work by employees and third party vendors."   Complaint ¶ 10.   The Commission maintains that the various Defendants may be liable for discrimination against the class of former employees under one or more theories of multiple entity liability, and that it should not be expected to further untangle these corporate relationships at the pleading stage.   The Court addresses both entities and the EEOC's theories of liability in turn.

**A.    <u>Big Kahuna Was Not The Employer Of Any Claimant</u>**

Defendants urge the Court to dismiss Big Kahuna because it was not incorporated in the State of Hawaii until October 20, 2015, after the Charging Party and all claimants allegedly left Defendants' employment.   *See* Petrus Decl., Ex B. (Big Kahuna Articles of Incorporation); Dkt. No. 9-4.

Even assuming the truth of its allegations, that "Malagon managed the luau event operated by Big Kahuna Luau, Inc., including supervision of work by employees," the Complaint fails to allege plausible facts showing that Big Kahuna could have been an employer (or joint employer) of any of the Claimants or the Charging Party where Big Kahuna did not even exist at the time of any of the incidents of harassment described in the Complaint. *See EEOC v. La Rana Hawaii, LLC*, 888 F. Supp. 2d 1019, 1046 (D. Haw. 2012) ("The EEOC must allege specifically what wrongdoing it is assigning to each Defendant. If the EEOC intends to proceed on a theory of joint employer liability, it must allege facts sufficient to support its contention that both Defendants controlled the terms and conditions of the Claimants' employment.") (citing *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275–77 (9th Cir. 2003)).

Accordingly, because the Complaint does not allege any unlawful conduct during the time period after Big Kahuna was incorporated on October 20, 2015, the Commission fails to plausibly allege facts that Big Kahuna was an employer of any claimant.

### B.     Joint Employer Liability Is Not Sufficiently Alleged

The Commission conclusorily alleges that DHT, Hawaii Tours and Transportation, and Big Kahuna acted as one another's "successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or under the

direction and control of the others."   Complaint ¶ 11.   The Complaint, however, does not include sufficient facts to support the legal conclusion.   To the extent it seeks to hold Hawaii Tours and Transportation liable as a joint employer, the Complaint does not allege facts showing that such a joint employment relationship actually exists.

In making such a determination, the Ninth Circuit applies an "economic reality test" that takes into account "all factors relevant to the particular situation." *Global Horizons*, 860 F. Supp. 2d at 1183 (quoting *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003)).   "For example, the Ninth Circuit has considered whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled the employee and his work site."   *Global Horizons*, 860 F. Supp. 2d at 1183 (citing *Pac. Mar. Ass'n*, 351 F.3d at 1277).

There are no allegations that Hawaii Tours and Transportation exhibited any of these powers or characteristics with respect to any claimant.   The Complaint alleges that Claimant 3 was employed by DHT—not Hawaii Tours and Transportation—and fails to allege that anyone at Hawaii Tours and Transportation, including Malagon's wife,[10] exerted any control over Claimant 3 or the operations

---

[10]The Commission alleges that Malagon—but not his wife—"on multiple occasions show[ed] Claimant 3 pictures of Malagon and others having sex with Malagon's wife, and ma[de] sexual

of DHT.   Although the Complaint does not allege which entity employed Claimant

4, based upon the allegation that Hawaii Tours and Transportation's "sole function

was to lease and operate vehicles used by DHT in their tours," Complaint ¶ 9, it does

not appear reasonably likely that he was employed by Hawaii Tours and

Transportation "*as a bartender* between July and August 2015."   Complaint ¶ 19.e.

(emphasis added).

In any event, there are no allegations that Hawaii Tours and Transportation

acted as a joint employer with DHT—that it controlled the terms and conditions of

any claimant's employment.   The Commission's "conclusory allegation that

[Defendants] were [claimants'] joint employer under Title VII . . . is insufficient to

withstand a Rule 12(b)(6) motion."   *Shah v. Littelfuse Inc.*, 2013 WL 1828926, at

*3–4 (N.D. Ill. Apr. 29, 2013) (quotation marks omitted); *cf. Pruitt v. Pers. Staffing*

*Grp., LLC*, 2016 WL 6995566, at *4 (N.D. Ill. Nov. 30, 2016) (holding that

plaintiffs stated plausible Title VII claims against defendant as their joint employer

when allegations showed that defendant "had certain control over Plaintiffs'

employment"); *Tritsis v. BankFinancial Corp.*, 2016 WL 5171785, at *2 (N.D. Ill.

Sept. 21, 2016) (holding that plaintiff, an executive officer at a bank, sufficiently

---

comments including that Malagon's wife loved 'big cocks' and ask[ed] [C]laimant 3 whether he
had a 'big cock.'"   Complaint ¶ 19.d.   There are no allegations that Malagon's wife was aware of
this conduct or that she participated in the alleged harassment, retaliation, or constructive
discharge of Claimant 3 or of any other claimant.

alleged that an entity was her joint employer when she alleged that the entity "exerted a significant degree of control" over her employment by determining bank executives' eligibility for stock options).

Without more, the allegations in the Complaint are insufficient to establish the factors necessary for DHT and Hawaii Tours and Transportation to be considered joint employers.

### C. The Complaint Does Not Sufficiently Allege That Hawaii Tours And Transportation Is The Alter Ego of DHT

Defendants also seek dismissal on the basis that Hawaii Tours and Transportation and DHT are not alter egos and that the Complaint fails to set forth sufficient factual allegations to allow the EEOC to pierce the corporate veil. The Court agrees.

"Generally speaking, a corporation will be deemed the alter ego of another 'where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim.'" *Hillhouse v. Hawaii Behavioral Health, LLC*, 2015 WL 3448706, at *3 (D. Haw. May 29, 2015) (quoting *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawai'i 224, 241, 982 P.2d 853, 870 (1999)). *Robert's* set forth the legal standard for establishing alter ego liability—

> Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must

be made to appear that [1] the corporation is not only influenced and governed by that person, but that there is such a unity of interest . . . that the individuality, or separateness, of such person and corporation has ceased, and [2] that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Robert's*, 91 Hawai'i at 241–43, 982 P.2d at 870–72 (citations omitted) (some alterations in *Robert's*).[11]   Even assuming the truth of the allegations in the

---

[11]Courts may weigh several factors in determining whether a corporate entity is the alter ego of another, and no one factor is dispositive.   These include:

> [1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the identical equitable ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] identity of directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; [10] the employment of the same employees and/or attorney; [11] the failure to adequately capitalize a corporation; [12] the total absence of corporate assets, and undercapitalization; [13] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [14] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [15] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; the use of the corporate entity to procure labor, services or merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*See Robert's*, 91 Hawai'i at 241–43, 982 P.2d at 870–72 (citations omitted).

Complaint, the Commission falls short of making the necessary showing at the motion to dismiss stage.

Although the Complaint alleges that Malagon was the "sole partner, president, treasurer, and director" of DHT, Complaint ¶ 9, and that his spouse, Danielle Diamond, was the owner of Hawaii Tours and Transportation, Complaint ¶ 9, it does not allege that Diamond or Hawaii Tours and Transportation "influenced or governed" Malagon or DHT, or that Diamond or Hawaii Tours and Transportation had "parental control of [DHT's] internal affairs or daily operations." *Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015). To the contrary, the EEOC alleges that Malagon and/or DHT de facto controlled Hawaii Tours and Transportation: "Malagon controlled the operations of Hawaii Tours and Transportation Inc., including the authority to hire/fire employees." Complaint ¶ 9. To be clear, the Complaint fails to allege facts that Hawaii Tours and Transportation was a parent corporation of DHT, was a shareholder of DHT, or had any ownership interest in DHT, or that DHT was a subsidiary of Hawaii Tours and Transportation. Because the Complaint alleges that Malagon was the "sole partner . . . and director of [DHT]," Complaint ¶ 9, the EEOC has not plausibly alleged that Hawaii Tours and Transportation is the alter ego of DHT.

In sum, as currently pled, the factual allegations in the Complaint are not sufficient to establish that either Hawaii Tours and Transportation or Big Kahuna

was an employer of any claimant, and Defendants' Motion is granted.   Because

amendment may be possible, dismissal is with leave to amend.[12]

## V.   <u>Leave To Amend</u>

Because amendment of the claims and parties dismissed by this Order may be

possible, the Commission is granted leave to amend to address the deficiencies

identified herein, by no later than November 3, 2017.   Should it choose to amend

the dismissed causes of action as to any claimant and/or Defendant, the Commission

must allege additional facts as to each element required to state a claim.   The Court

cautions the EEOC to carefully consider whether it can allege facts stating a

cognizable claim on behalf of any claimant, and as to each Defendant, in any

amended complaint it considers filing with this Court.

---

[12]Although the Complaint alleges that Defendants operated as a "single employer" or "integrated enterprise," *see* Complaint ¶ 11, the Court does not reach the issue of whether Defendants are in fact, a single employer, or whether dismissal is proper on this basis at this time.   *See Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 928 (9th Cir. 2003) (holding that "integrated enterprise" test "does not determine joint *liability* as the parties suggest, but instead determines whether a defendant *can meet the statutory criteria* of an 'employer' for Title VII applicability" because "[a] plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard"); *Razo v. Timec Co., Inc*., 2016 WL 6576625, at *8 (N.D. Cal. Nov. 7, 2016) ("An employee asserting a Title VII claim against an employer with less than 15 employees may use the integrated enterprise test to show that, together, the employers meet the 15-employee minimum.   But where a plaintiff's employer has at least 15 employees, 'the integrated enterprise test is inapplicable.'") (quoting *Anderson*, 336 F.3d at 928–29).   That is, the single employer or integrated enterprise doctrine is not applicable at this point, in light of the EEOC's uncontested allegation that DHT has at least fifteen employees.   Complaint ¶ 2.

# CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

The EEOC is granted leave to file an amended complaint to attempt to cure the

deficiencies noted in this Order by November 3, 2017.

IT IS SO ORDERED.

DATED: September 21, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*EEOC v. Discovering Hidden Haw. Tours, Inc. et al.,* CV. NO. 17-00067 DKW-KSC; **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**